# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ALBERT WATERS and | : | |
| LISA WATERS, | : | |
|     Plaintiffs, | : | CIVIL ACTION |
| | : | |
| v. | : | NO. 06-0032 |
| | : | |
| NMC WOLLARD, INC. and | : | |
| HOBART BROTHERS COMPANY, | : | |
|     Defendants. | : | |

## Memorandum and Order

YOHN, J.                                                                                              August ____, 2008

Plaintiff Albert Waters brought this products liability claim based on a defective design against the following defendants: NMC Wollard, Inc. ("NMC"), a manufacturer of Wollard belt loaders; three former manufacturers of Wollard belt loaders, including Wollard Airport Equipment Co. ("WAEC"); and Hobart Brothers Company ("Hobart"), WAEC's parent company.[1] NMC filed a cross-claim against Hobart. In its cross-claim, NMC asks the court to find Hobart liable over to NMC for full indemnity or contribution. Hobart now moves for summary judgment on NMC's cross-claim.[2]

---

[1] Other claims and other defendants in this action are not relevant to this motion.

[2] NMC argues that Hobart's motion is premature because the right to contribution or indemnity arises only after liability has been assessed against "the potential indemnitee." (NMC's Mem. in Opp'n to Hobart's Mot. for Summ. J. as to Co-Defs.' Cross-Caims 4.) While the right to payment resulting from contribution or indemnification does not arise until the potential indemnitee is held liable, there is no bar to deciding now whether Hobart may, in the future, be liable over to NMC for contribution or indemnification.

Additionally, NMC argues that Hobart's motion is improperly supported because Hobart relies on a superseded pleading. (NMC's Mem. 3.) As the basis for its motion, Hobart cites

I.   **Factual and Procedural Background**

Plaintiffs' claims arose out of an accident that occurred while Waters was operating a Wollard belt loader in the course of his employment as a baggage handler at Philadelphia International Airport. As explained in the memoranda accompanying the two previous summary judgment orders in this case, *see Waters v. NMC-Wollard*, No. 06-0032, 2008 WL 90241, at *8 (E.D. Pa. Jan. 9, 2008); *Waters v. NMC-Wollard, Inc.*, No. 06-0032, 2007 WL 2668008, at * 10 (E.D. Pa. Sept. 5, 2007), four corporations have manufactured the two models of Wollard belt loaders used by Waters in the course of his employment. Plaintiffs have admitted that they cannot identify which corporation manufactured the belt loader from which Waters fell.

For purposes of this motion, the relevant, undisputed facts relating to those four corporations—Criton Technologies; WAEC; Wollard Airport Equipment Company, Inc. ("WAEC, Inc."); and NMC—are as follows. A division of Criton Technologies manufactured and sold belt loaders from 1983 until 1987. In 1987, Criton sold the division's assets and liabilities to WAEC, a separate corporation but wholly owned subsidiary of Hobart. Thus, WAEC was the second corporation to manufacture and sell Wollard belt loaders. Except through its subsidiary WAEC, Hobart never manufactured belt loaders. In 1996, Illinois Tool Works ("ITW") acquired Hobart, becoming Hobart's parent corporation.

In 1994, before ITW's purchase of Hobart, WAEC sold substantially all of its assets (including the WAEC name) and certain of its liabilities to WAEC, Inc. pursuant to an asset

---

NMC's cross-claim accompanying NMC's original answer to plaintiffs' complaint. After NMC filed its original answer and cross-claim, plaintiffs filed an amended complaint and a revised amended complaint. Thereafter, NMC filed an answer to plaintiffs' revised amended complaint and included the same cross-claim that accompanied its original answer. Thus, NMC's argument that Hobart's motion is unsupported by an appropriate pleading is without merit.

purchase agreement ("APA"). Hobart was also a party to the APA, which contained a section describing WAEC and Hobart's limited agreement to indemnify WAEC, Inc.

In 2000, WAEC, Inc. merged with Northwestern Motor Company, Inc. The resulting corporation is defendant NMC, which is the fourth manufacturer of Wollard belt loaders. In the memorandum accompanying the court's order dated January 9, 2008, the court explained that all four manufacturers of the relevant models of Wollard belt loaders are linked by successor liability, meaning that NMC could be liable for Waters's injuries regardless of which corporation manufactured the belt loader from which he fell. *See Waters*, 2008 WL 90241, at *8.

The court previously held that plaintiffs could not recover from Hobart and entered summary judgment in favor of Hobart on plaintiffs' claims against Hobart. *See Waters*, 2007 WL 2668008, at * 10. The court concluded that plaintiffs could not prevail against Hobart under either theory of liability they propounded. Plaintiffs could not prevail against Hobart under a theory of vicarious liability because there was no evidence from which a reasonable juror could conclude that Hobart's subsidiary, WAEC, as opposed to the other manufacturers of Wollard belt loaders, manufactured the Wollard belt loader Waters was using when he was injured. *Id.* at *8. Additionally, plaintiffs could not prevail against Hobart under a theory of alternate liability because the defendant belt-loader manufacturers did not act simultaneously; instead, the belt loader of only one defendant was being used at the time of Waters's accident. *Id.* at *9-10.

Hobart now argues that the court's September 5, 2007 order and the fact that Hobart never manufactured belt loaders preclude NMC from prevailing on its cross-claims for indemnity and contribution. Hobart filed its motion for summary judgment as to NMC's cross-claim on May 7, 2008. NMC filed a response, and Hobart filed a reply. Oral argument was held on

3

August 25, 2008.

## II.  Discussion[3]

NMC has not contested Hobart's assertion that this court's September 5, 2007 order granting summary judgment in favor of Hobart on plaintiffs' claims forecloses NMC's right to contribution[4] or common law indemnity[5] as a matter of law. (*See* NMC's Mem. 4.) Instead,

---

[3] A motion for summary judgment will be granted only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In this case, there is no dispute as to material facts. If no factual issues exist and the only issues before the court are legal, then summary judgment is appropriate. *See Sempier v. Johnson & Higgins*, 45 F.3d 724, 727 (3d Cir. 1995).

[4] In Pennsylvania, "[t]he right of contribution exists among joint tort-feasors." 42 Pa. Cons. Stat. § 8324(a). Joint tortfeasors are defined as "two or more persons jointly or severally liable in tort for the same injury to persons or property, whether or not judgment has been recovered against all or some of them." *Id.* § 8322. Courts consider the following factors when determining whether defendants are joint tortfeasors:
> the identity of a cause of action against each of two or more defendants; the existence of a common, or like duty; whether the same evidence will support an action against each; the single, indivisible nature of the injury to the plaintiffs; identity of the facts as to time, place or result; whether the injury is direct and immediate, rather than consequential, responsibility of the defendants for the same injuria as distinguished from damnum.

*Voyles v. Corwin*, 441 A.2d 381, 383 (Pa. Super. Ct. 1982) (quoting William L. Prosser, *Law of Torts*, § 46 n.2 (4th ed. 1971) (footnotes omitted)).

NMC and Hobart cannot be joint tortfeasors under this definition and the *Voyles* factors. The theory of the cause of action against the two is distinct, the duties of NMC (a manufacturer) and Hobart (a parent company of a manufacturer) are not identical, and the evidence sufficient to establish NMC's liability would be insufficient to establish Hobart's liability. Moreover, any potentially tortious acts of NMC or Hobart are "severable as to time, neither having the opportunity to guard against the other's acts," *Lasprogata v. Qualls*, 397 A.2d 803, 805 (Pa. Super. Ct. 1979). *See Waters*, 2007 WL at *9 (finding that "plaintiffs have not produced any evidence that Hobart's and NMC's conduct was substantially simultaneous"). Therefore, NMC could not prevail under this theory.

[5] Common law indemnity is "a right which enures to a person who, without active fault on his own part, has been compelled, by reason of some legal obligation, to pay damages occasioned by the [fault] of another, and for which he himself is only secondarily liable." *MIIX*

NMC argues that it is entitled to contractual indemnity based on the indemnification provisions of the APA between WAEC, Hobart, and WAEC, Inc.

Hobart asserts that "NMC did not allege any right to contractual indemnity" and so is not entitled to raise that theory now. (Hobart's Mem. in Supp. Hobart's Mot. for Summ. J. as to Co-Defs.' Cross-Claims 6.) In response, NMC argues that "contractual indemnity *is* encompassed within the [c]ross-[c]laim." (NMC's Mem. 5.) Although NMC did not specifically plead contractual immunity in its cross-claim, Hobart had notice that NMC would rely on the APA to assert a claim for indemnity. NMC's cross-claim is broad enough to encompass a contractual immunity claim: NMC "pray[s] that this [c]ourt enter judgment against the [c]o-[d]efendants as jointly and severally liable for any and all liability . . . in which case [c]o-[d]efendants are liable over to [NMC] for full indemnity and/or contribution, including reimbursement of damages, costs, legal expenses[,] and fees." (Ans. of Wollard Defs. to Pls.' Revised Am. Compl., Cross-Claim.) Additionally, Hobart substantively responded to NMC's contractual indemnity argument and did not assert that it was without notice of the contractual basis for NMC's indemnity claim. Therefore, the theory is properly before the court.[6] Finally, in the court's January 9, 2008

---

*Ins. Co. v. Epstein*, 937 A.2d 469, 472 (Pa. 2007) (quoting *Builders Supply Co. v. McCabe*, 77 A.2d 368 (Pa. 1951)). Common law indemnity is "operable only when a defendant who has been held liable to a plaintiff solely by operation of law[] seeks to recover his loss from a defendant who was actually responsible for the accident which occasioned the loss." *Sirianni v. Nugent Bros., Inc.*, 506 A.2d 868, 871 (Pa. 1986). There is no evidence from which a reasonable juror would be able to conclude that Hobart's subsidiary, WAEC, as opposed to the other former manufacturers of Wollard belt loaders, manufactured the Wollard belt loader plaintiff was using when he was injured and so was actually responsible. *See Waters*, 2007 WL 2668008, at *8. Therefore, NMC could not prevail under this theory, either.

[6] Even if the contractual indemnity claim were not properly pleaded here, nothing would prevent NMC from bringing a separate indemnity claim against Hobart at a later date. In the interest of judicial economy, I will proceed to consider this claim now.

memorandum, the court explained that its finding that plaintiffs' remedies against WAEC were destroyed by WAEC's sale to WAEC, Inc. "does not mean that NMC cannot pursue remedies pursuant to the APA's indemnity clause or any other agreement it may have with Hobart or ITW." *Waters*, 2008 WL 90241, at *6 n.12.

Indemnification agreements are interpreted according to the general rules of contract interpretation:

> "The fundamental rule in interpreting the meaning of a contract is to ascertain and give effect to the intent of the contracting parties." *Murphy v. Duquesne Univ. of the Holy Ghost*, 565 Pa. 571, 777 A.2d 418, 429 (2001). "Indemnity agreements are to be narrowly interpreted in light of the parties' intentions as evidenced by the entire contract." *Consolidated Rail Corp. v. Delaware River Port Auth.*, 880 A.2d 628, 632 (Pa. Super. 2005). "In interpreting the scope of an indemnification clause, the court must consider the four corners of the document and its surrounding circumstances." *Widmer Engineering, Inc. v. Dufalla*, 837 A.2d 459, 472 (Pa. Super. 2003) (citations and quotation marks omitted).

*Chester Upland Sch. Dist. v. Edward J. Melony, Inc.*, 901 A.2d 1055, 1059 (Pa. Super. Ct. 2006). "Where contract language is clear and unambiguous, the court shall interpret the agreement as expressed, rather than silently intended." *County of Del. v. J.P. Mascaro & Sons, Inc.*, 830 A.2d 587, 591 (Pa. Super. Ct. 2003) (citing *Steuart v. McChesney*, 444 A.2d 659, 661 (Pa. 1982)).

The section of the APA to which NMC directs the court is not ambiguous, and its plain meaning does not dictate that Hobart indemnify NMC for damages paid by NMC, if any, in the instant suit. The section provides that WAEC and Hobart

> shall indemnify and hold [WAEC, Inc.] harmless at all times from and after the date of this Agreement, against and in respect of all damages, losses, costs[,] and expenses (including reasonable attorneys' fees) which [WAEC, Inc.] may suffer or incur in connection with . . . [t]he breach by [WAEC] or Hobart of any of their representations, warranties[,] or covenants in this Agreement.

(NMC's Mem. Ex. A, at ¶ 10.1(b).) In its brief, NMC did not direct the court to the

representation, warranty, or covenant it believes Hobart breached.  At oral argument, NMC

discussed sections 3.17 and 3.20.  Section 3.17 deals with product liability claims:

> Except as set forth on Exhibit 3.17 hereto,[7] during the last three (3) years [WAEC] has not received a claim exceeding $10,000 based upon alleged . . . personal injury arising from [WAEC's] manufacture or sale of its products . . . . [WAEC] has no reasonable ground to believe that future [p]roduct [l]iability [c]laims with respect to products of [WAEC] sold through the [b]usiness prior to the [c]losing [d]ate will be different from [WAEC's] past experience with respect thereto as set forth herein.

(*Id.* at ¶ 3.17 (footnote added).)  Section 3.20 deals with litigation, adverse claims, and related

matters:

> Except as disclosed on Exhibit 3.20 hereto,[8] there is no pending or threatened litigation (nor, to [WAEC's] knowledge, any claim which may lead to a threat of litigation), proceeding, or investigation . . . relating to any material aspect of the [b]usiness or [p]urchased [a]ssets . . . .

(*Id.* at ¶ 3.20 (footnote added).)  None of the other representations or warranties by WAEC

appears relevant.  (*See id.* §§ 3.1-3.30.)

The language of section 10.1(b), read together with section 3.17 or 3.20, is not

ambiguous.  The provisions explain that Hobart will indemnify WAEC, Inc. if WAEC

misrepresented the nature of the product liability claims or other litigation pending or threatened

at the time of the asset sale in October 1994, or the nature of the product liability claims it

reasonably believed would be brought in the future.  NMC has presented no evidence whatsoever

that either representation has been breached.  The provisions, read together, are inapplicable to

the question whether Hobart must indemnify WAEC, Inc. for damages paid as a result of a

successful product liability claim brought as a result of injury caused by a WAEC-manufactured

---

[7] Exhibit 3.17 is not before the court.

[8] Exhibit 3.20 is not before the court.

product.⁹

Additionally, no evidence supports application of the provisions here. As for section 3.17, no evidence supports the proposition that, as of the date of the asset sale, WAEC had any "reasonable ground to believe" that a claim such as plaintiffs' would arise. And as for section 3.20, plaintiffs instituted this litigation in January 2006 after Waters's accident in June 2004, long after the asset sale in October 1994. The the instant litigation was not pending or threatened as of the date of the asset sale.

Even if some provision of the APA provided that Hobart would indemnify WAEC, Inc. for damages paid as a result of a successful product liability claim brought as a result of injury caused by a WAEC-manufactured product, NMC would not be entitled to indemnification by Hobart in this case. Again, there is no evidence from which a reasonable juror would be able to conclude that WAEC manufactured the Wollard belt loader plaintiff was using when he was injured.¹⁰ Thus, there is no interpretation of the APA's indemnity provisions that would entitle

---

⁹ NMC asserts, without explanation, that section 10.1(b) is ambiguous and that, therefore, the court should "look to the parties' conduct to ascertain the intent with respect to indemnification." (NMC's Mem. 6.) Citing the deposition of NMC's CEO, Kevin Steingart, NMC argues that "it is clear there was an understanding that Hobart would defend and indemnify NMC with respect to all products manufactured prior to October 1994 when [WAEC, Inc.] purchased the assets of WAEC." (*Id.*) Steingart testified that he forwarded to ITW, Hobart's parent company, lawsuits that involved belt loaders that were manufactured by WAEC. (NMC's Mem. Ex. B, K. Steingart Dep. 11:7-19, May 1, 2006; *see also id.* at 13:13-18.) This testimony is irrelevant to indemnification of WAEC, Inc. and its successors by Hobart pursuant to the APA. As NMC states, the referrals were only made concerning products manufactured prior to 1994 (NMC's Mem. 6-7), and NMC cannot establish that the belt loader in question was manufactured prior to 1994.

¹⁰ NMC asserted at oral argument that its discovery on this issue was incomplete. However, the fact discovery period ended long ago, and NMC made no request to reopen discovery prior to oral argument on this motion.

NMC to indemnification by Hobart for damages paid as a result of injury caused by a WAEC-manufactured belt loader.

**III.   Conclusion**

Hobart's motion for summary judgment as to NMC's cross-claim for contribution or indemnity will be granted. NMC did not pursue claims for contribution or common law indemnity, and, even if it had, it could not have prevailed under those theories. Given the facts of this case, NMC is also not entitled to contractual indemnity pursuant to the APA.

An appropriate order follows.

# IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ALBERT WATERS and | : | |
| LISA WATERS, | : | |
|     Plaintiffs, | : | CIVIL ACTION |
| | : | |
| v. | : | NO. 06-0032 |
| | : | |
| NMC WOLLARD, INC. and | : | |
| HOBART BROTHERS COMPANY, | : | |
|     Defendants. | : | |

## Order

AND NOW, this _____ day of August 2008, upon consideration of defendant Hobart Brothers Company's motion for summary judgment as to NMC Wollard, Inc.'s cross-claim (Docket No. 68), codefendant NMC Wollard, Inc.'s response, and Hobart Brothers Company's reply, it is hereby ORDERED that Hobart Brothers Company's motion for summary judgment is GRANTED.  Judgment is entered in favor of Hobart Brothers Company and against NMC Wollard, Inc. on NMC Wollard, Inc.'s cross-claim.

                                                                                                                          s/ William H. Yohn Jr.
                                                                                                                            William H. Yohn Jr., Judge